E-FILED
Wednesday, 01 June, 2016  11:28:13 AM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | | |
|---|---|---|
| KELLY D. EBMEYER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 16-4056 |
| | ) | |
| JOSEPH YURKOVICH, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |

**MERIT REVIEW OPINION**

SUE E. MYERSCOUGH, U.S. District Judge:

Plaintiff, proceeding pro se and presently incarcerated at
Shawnee Correctional Center, brings the present lawsuit pursuant
to 42 U.S.C. § 1983 alleging violations of the Eighth Amendment's
proscription against cruel and unusual punishment related to
events that allegedly occurred while he was incarcerated at Hill
Correctional Center.  The matter comes before this Court for merit
review under 28 U.S.C. §1915A.  In reviewing the complaint, the
Court takes all factual allegations as true, liberally construing them
in Plaintiff's favor.  Turley v. Rednour, 729 F.3d 645, 649 (7th Cir.
2013).  However, conclusory statements and labels are insufficient.
Enough facts must be provided to "state a claim for relief that is

plausible on its face." <u>Alexander v. U.S.</u>, 721 F.3d 418, 422 (7th Cir. 2013) (internal citation omitted).

## ALLEGATIONS

Plaintiff alleges that while he was incarcerated at Hill Correctional Center ("Hill"), members of the Orange Crush tactical team ordered him and other inmates to subject to a group strip search.  During this search, Plaintiff alleges that he and other inmates were ordered to touch their genitals and then open their mouths with the same hand.  Plaintiff also alleges that Defendant Ohlberg, a correctional sergeant, squeezed Plaintiff's testicles "with extreme force, resulting in instant pain and nausea, and the inability to walk correctly."

Plaintiff alleges that prison officials then applied handcuffs in an excessively tight manner.  The inmates, while still naked, were forced to walk in a line in such a close proximity to each other that an inmate's genitals were in contact with the buttocks of the inmate directly in front of him.  According to Plaintiff, prison officials referred to this practice as "nuts-to-butts."  Plaintiff alleges he was marched into the gymnasium where he was forced to stand facing a wall while still handcuffed for approximately three (3) hours.

During the march from the cells to the gymnasium, Plaintiff alleges that prison officials laughed at and taunted the inmates.

Plaintiff alleges he suffered physical and psychological injury, including headaches, dizziness, blurred vision, and extreme wrist pain.  After the strip search, Plaintiff alleges his requests for medical treatment were denied.  Plaintiff alleges he eventually saw a nurse who provided ibuprofen.  Following his transfer to a different prison, Plaintiff alleges that x-rays revealed "nerve compression in [his] wrists from the overly tight handcuffs."

Plaintiff alleges further that his cell was searched and several items of personal property were confiscated as a result.  Plaintiff alleges that prison officials failed to follow the prison rules regarding the issuance of "shakedown slips" to document what property was confiscated.

## ANALYSIS

### Strip Search Claim

"A prisoner states a claim under the Eighth Amendment when he plausibly alleges that the strip search in question was motivated by a desire to harass or humiliate rather than by a legitimate justification, such as the need for order and security in prisons."

King v. McCarty, 781 F.3d 889, 897 (7th Cir. 2015).  Plaintiff's allegations, as a whole, suggest that prison officials conducted these strip searches for purposes of humiliation.  Determination of whether a legitimate penological reason existed for the searches and the manner in which they were allegedly conducted must await a more developed record.  Therefore, the Court finds that Plaintiff states an Eighth Amendment claim related to the strip searches.

### Excessive Force Claim

In Eighth Amendment claims for excessive force, the relevant inquiry is "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm."  Hudson v. McMillian, 503 U.S. 1, 6 (1992) (citation omitted); see DeWalt v. Carter, 224 F.3d 607 (7th Cir. 2000) (applying Hudson).  In making this determination, the court may examine several factors, "including the need for an application of force, the relationship between that need and the force applied, the threat reasonably perceived by the responsible officers, the efforts made to temper the severity of the force employed, and the extent of the injury suffered by the prisoner."  Dewalt, 224 F.3d at 619.  Significant injury is not required, but "a

claim ordinarily cannot be predicated on a <u>de minimis</u> use of physical force." <u>Id</u>. at 620 (citing <u>Hudson</u>, 503 U.S. at 9-10). "Thus, not every push or shove by a prison guard violates a prisoner's constitutional rights." <u>Id.</u>

Plaintiff alleges that Defendant Ohlberg squeezed Plaintiff's testicles with enough force to cause extreme pain, nausea, and the inability to walk normally.  On these allegations, the Court finds that Plaintiff states an Eighth Amendment claim for excessive force.

## Medical Claims

Plaintiff does not identify any prison officials that personally denied his requests for medical treatment.  Instead, Plaintiff names only Wexford Health Sources, Inc., the corporation contracted to provide medical services at the prison.  Before a corporation may be held liable under § 1983, Plaintiff must establish an underlying constitutional violation.  <u>See</u> <u>Pyles v. Fahim</u>, 771 F.3d 403, 412 (7th Cir. 2014) (corporation may not be held liable where there is no underlying constitutional violation).  Moreover, there is no indication that the prison officials who allegedly denied Plaintiff's requests were employees of Wexford.

To state a claim, Plaintiff must allege that specific prison officials acted with deliberate indifference to a serious medical need. Estelle v. Gamble, 429 U.S. 97, 105 (1976).  At this time, Plaintiff has not done so.  Accordingly, Plaintiff's claims for inadequate medical care will be dismissed without prejudice to amending his complaint.

## Personal Property and Shakedown Slips

Plaintiff alleges that during the searches, prison officials searched his cell, confiscated personal property, and did not issue a written inventory of the items seized ("shakedown slips").  In his Complaint, Plaintiff references several grievances that describe the property seized as a towel, bowls, bottles, and a package of Taster's Choice coffee.  (Doc. 1 at 20-25).  Presumably, Plaintiff has not received these items back.

Plaintiff's allegations suggest that the deprivations he suffered were a result of intentional, but unauthorized, acts of prison employees.  In other words, the confiscation of Plaintiff's non-contraband property was not mandated by an established prison policy—prison officials acted on their own volition.  In this scenario, the confiscation or destruction of personal property does not violate

due process where state law provides a meaningful post-deprivation remedy.  Hudson v. Palmer, 468 U.S. 517, 530 (1984).  Plaintiff has an adequate remedy available to him in the Illinois Court of Claims. See Stewart v. McGinnis, 5 F.3d 1031, 1036 (7th Cir. 1993).

Plaintiff also alleges that prison officials failed to comply with the prison's administrative rules regarding the issuance of shakedown slips.  Standing alone, the failure to comply with a state administrative rule does not state a constitutional claim.  See Guarjardo-Palma v. Martinson, 622 F.3d 801, 806 (7th Cir. 2010) ("[A] violation of state law is not a ground for a federal civil rights suit."); Allison v. Snyder, 332 F.3d 1076, 1079 (7th Cir. 2003) (The federal constitution does not "permit a federal court to enforce state laws directly.").

Therefore, Plaintiff's claims related to the search of his cell and the non-issuance of shakedown slips will be dismissed without prejudice to filing an amended complaint.

### Proper Defendants

"Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, liability does not attach unless the individual defendant caused or participated in a

constitutional deprivation." <u>Vance v. Peters</u>, 97 F.3d 987, 991 (7th

Cir. 1996) (citations omitted).  A plaintiff must plead that each

official, "though the official's own individual actions, has violated

the Constitution." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 676 (2009).  A

government official may not be held liable under § 1983 on a theory

of respondeat superior, that is, for the unconstitutional acts of his

or her subordinates.  <u>Id</u>.  To be held liable, a government supervisor

"must know about the conduct and facilitate it, approve it, condone

it, or turn a blind eye...." <u>Vance</u>, 97 F.3d at 993 (quoting <u>Gentry v.

Duckworth</u>, 65 F.3d 555, 561 (7th Cir. 1995)).

With respect to Defendant Yurkovich, the Illinois Department

of Corrections ("IDOC") Chief of Operations, and Defendant

Baldwin, the current IDOC Director, Plaintiff has not sufficiently

alleged that these individuals personally participated or condoned

the strip search in question.  Therefore, these defendants will be

dismissed.

Plaintiff does not make any specific allegations against

Defendant Akpore, the Warden at Hill Correctional Center.

Defendant Akpore, however, will remain a defendant as Plaintiff has

named several unidentified members of the Orange Crush tactical

team as defendants.  Defendant Akpore shall be dismissed upon proper motion once the identities of the members of the Orange Crush who conducted the search are ascertained.  See Donald v. Cook Cnty. Sheriff's Dep't, 95 F.3d 548, 555-56 (7th Cir. 1996) (Court may name high level administrators as defendants for purposes of identifying Doe defendants).

**IT IS THEREFORE ORDERED:**

**1)      Pursuant to its merit review of the Complaint under 28 U.S.C. § 1915A, the Court finds that Plaintiff states the following claim: Eighth Amendment claims for the humiliating strip search and excessive force.  Any additional claims shall not be included in the case, except at the Court's discretion on motion by a party for good cause shown or pursuant to Federal Rule of Civil Procedure 15.**

**2)      Clerk is directed to dismiss Defendants Yurkovich, Baldwin, Wexford Health Sources, and Unknown Members of Orange Crush.**

**3)      This case is now in the process of service.  Plaintiff is advised to wait until counsel has appeared for Defendants before filing any motions, in order to give Defendants notice and an opportunity to respond to those motions.  Motions filed before Defendants' counsel has filed an appearance will generally be denied as premature.  Plaintiff need not submit any evidence to the Court at this time, unless otherwise directed by the Court.**

**4)      The Court will attempt service on Defendants by mailing each Defendant a waiver of service.  Defendants have 60 days from the date the waiver is sent to file an Answer.  If Defendants have not filed Answers or appeared through counsel**

within 90 days of the entry of this order, Plaintiff may file a motion requesting the status of service.  After Defendants have been served, the Court will enter an order setting discovery and dispositive motion deadlines.

5)     With respect to a Defendant who no longer works at the address provided by Plaintiff, the entity for whom that Defendant worked while at that address shall provide to the Clerk said Defendant's current work address, or, if not known, said Defendant's forwarding address. This information shall be used only for effectuating service.  Documentation of forwarding addresses shall be retained only by the Clerk and shall not be maintained in the public docket nor disclosed by the Clerk.

6)     Defendants shall file an answer within 60 days of the date the waiver is sent by the Clerk.  A motion to dismiss is not an answer.  The answer should include all defenses appropriate under the Federal Rules.  The answer and subsequent pleadings shall be to the issues and claims stated in this Opinion.  In general, an answer sets forth Defendants' positions.  The Court does not rule on the merits of those positions unless and until a motion is filed by Defendants.  Therefore, no response to the answer is necessary or will be considered.

7)     This District uses electronic filing, which means that, after Defense counsel has filed an appearance, Defense counsel will automatically receive electronic notice of any motion or other paper filed by Plaintiff with the Clerk.  Plaintiff does not need to mail to Defense counsel copies of motions and other papers that Plaintiff has filed with the Clerk.  However, this does not apply to discovery requests and responses.  Discovery requests and responses are not filed with the Clerk.  Plaintiff must mail his discovery requests and responses directly to Defendants' counsel.  Discovery requests or responses sent to the Clerk will be returned unfiled, unless they are attached to and the subject of a motion to compel.  Discovery does not begin until Defense counsel has filed an appearance and the

Court has entered a scheduling order, which will explain the discovery process in more detail.

8)    Counsel for Defendants is hereby granted leave to depose Plaintiff at his place of confinement. Counsel for Defendants shall arrange the time for the deposition.

9)    Plaintiff shall immediately notify the Court, in writing, of any change in his mailing address and telephone number.  Plaintiff's failure to notify the Court of a change in mailing address or phone number will result in dismissal of this lawsuit, with prejudice.

10)   If a Defendants fails to sign and return a waiver of service to the clerk within 30 days after the waiver is sent, the Court will take appropriate steps to effect formal service through the U.S. Marshal's service on that Defendant and will require that Defendant to pay the full costs of formal service pursuant to Federal Rule of Civil Procedure 4(d)(2).

11)   Within 10 days of receiving from Defendants' counsel an authorization to release medical records, Plaintiff is directed to sign and return the authorization to Defendants' counsel.

12)   The clerk is directed to enter the standard order granting Plaintiff's in forma pauperis petition and assessing an initial partial filing fee, _if not already done_, and to attempt service on Defendants pursuant to the standard procedures.

ENTERED:     June 1, 2016

FOR THE COURT:

_s/Sue E. Myerscough_
SUE E. MYERSCOUGH
UNITED STATES DISTRICT JUDGE